### Charles M. Holt v. Tennent-Stribling Shoe Co.

1. EVIDENCE—*Of Corporate Existence.*—Evidence that a plaintiff, suing as a corporation, carried on its business as such under the management of persons acting and recognized as a board of directors, president, secretary and treasurer and issued stock; and that the defendant, in communications both verbal and written in respect to the matter in controversy, so treated it, is competent to prove it a corporation *de facto,* which is all that is required to meet a plea of *nul tiel corporation.*

2. COLLECTION AGENTS—*Liability for Acts of Correspondents.*—A collection agent undertook the collection of a claim for ten per cent of the amount collected and forwarded it to his correspondent at the residence of the debtor. The correspondent collected the claim, retained about forty per cent and soon after absconded. In a suit for the excess of charges above ten per cent the defendant offered to prove that the charges were reasonable and that his correspondent had been a man of good reputation. *Held,* inadmissible.

Assumpsit, on the common counts. Appeal from the Circuit Court of Adams County; the Hon. OSCAR P. BONNEY, Judge, presiding. Heard in this court at the May term, 1896. Affirmed. Opinion filed December 19, 1896.

L. E. EMMONS and SAMUEL WOODS, attorneys for appellant.

GEORGE M. JANES, attorney for appellee.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

Appellant carried on at Quincy, Ill., in his own name alone, an agency for the collection of past-due claims in all parts of the United States and Canada. Appellee, doing business in St. Louis, Mo., had a claim for $250 against one Jacob Sloop, who had been a merchant at Queen City, Schuyler Co., Mo., but had somewhat suddenly sold out and gone to Idaho. On March 22, 1893, George Schultheis, its traveling salesman and one of its stockholders, who resided at Quincy, and for some years had known appellant and of his business, placed this claim in his hands for collection and took a receipt to the company therefor as follows:

GEM CITY COLLECTING AGENCY,

C. M. HOLT, Attorney & Manager.

Room 6 Ricker Nat. Bank, Telephone 76.

For the protection of Merchants and Manufacturers and the collection of past due claims. Collections made throughout the United States and Canada.

QUINCY, ILL., March 22, 1893.

Tennant-Stribling Shoe Co., St. Louis, Mo.

GENTLEMEN: Your Mr. Schultheis left with me this A. M. for collection an acount of two hundred and fifty dollars

against Jacob Sloop, Queen City, Mo.   This claim shall have attention.   I shall keep you advised.      Yours truly,

C. M. HOLT."

Appellant promptly sent the claim to an attorney at Kirksville, some eighteen miles from Queen City, who attended to his business in that part of the state.   He proceeded to Queen City, where he learned that Sloop had left notes for collection in the Hayes Banking Co., and thereupon commenced a suit in attachment before a justice of the peace.   On being notified of this proceeding Sloop immediately wrote to the bank directing payment of the claim, which was accordingly made on April 20th, through the justice to the attorney, amounting to $254.57.   About three weeks afterward the latter remitted to appellant $165.40, but never any more, though pressed to do so, and later went to the farther west.   Immediately upon its receipt appellant sent to appellee $160.   For the balance claimed to be due on account of the collection, which he refused to pay, appellee brought this suit in assumpsit against him on the common count for money had and received.   The pleas were non-assumpsit, *nul tiel corporation* and set-off, on which issues were joined and a trial had, resulting in a verdict for plaintiff for $69.09, and judgment thereon, after a motion for a new trial, overruled.   Defendant brought the record here by appeal.

Appellee's name indicated a corporation.   Oral testimony was admitted over objection, to show that it carried on its business as such, under the management of persons acting and recognized as a board of directors, president, secretary and treasurer, and issued stock; and that appellant, in all his communications with it respecting this claim, verbal and written, until this suit was commenced, so treated it.   This testimony was not contradicted, and was competent to prove it a corporation *de facto*, which was all that was required in this action to meet the plea denying its corporate existence.   Walker Paint Co. v. Ruggles, 48 Ill. App. 406, and cases cited.

The questions on the merits were, who was responsible

to appellee, and how much, if anything, remained due to it, on account of the collection made. Appellant contends that he discharged his full duty in the premises by sending the claim to a competent and reputable attorney named and not objected to, with such information and advice respecting it as he was able to give, and faithfully accounting for all that he actually received on it; and that if responsible he is entitled to set off or recoup the reasonable expenses incurred. and value of the services rendered in the case. Appellee insists that he undertook to make the collection himself, by whatever means or agents he should see fit to use, and for an agreed compensation of ten per cent of the amount collected.

When Schultheis left the claim with appellant no one else was present. They alone have personal knowledge of the contract. Schultheis distinctly and positively testified that as to compensation the agreement was for ten per cent, and appellant, as positively, that no terms by which the amount could be fixed were stated.

That Holt was the agent of the appellee there seems to be no reason from the evidence to doubt. His business, as advertised by himself, was to make collections in all of the United States and Canada, and his office was in Illinois. His method was not to go abroad to make them, but to act by correspondents or agents. In his letter remitting to appellee he spoke of Porter as " my correspondent," and in another as "my local attorney." He told Schultheis that he would not go in person to Queen City, as desired, but had a man, Porter, who attended to his business in that region, and would attend to this for him. He gave directions to and received the remittance from him, and went to Kirksville to see him about the balance and pressed him for its payment. Neither Schultheis nor any officer of the company ever knew him or had any communication with or from him. These circumstances are ample proof that there was never any direct relation between him and appellee, and that appellant always regarded him as his agent.

Depositions of the president and secretary of the com·

pany, and of the justice at Queen City, to the same point, were admitted over objection by appellant, who moved to suppress them for supposed defects in the commissions and in the certificates of the commissioners, which were purely technical, and in our judgment too plainly untenable to call for special notice. Besides, they added nothing to the abundant proof made by other evidence received without objection. Indeed the appellant himself did not deny the fact, but claimed exemption from responsibility for Porter's default on another ground.

It appears that the claim was sent by appellant to Porter on the day it was received, March 22, 1895, with directions to go to Queen City and work up assets of Sloop. On his return to Kirksville he wrote to appellant under date of the 25th, giving particulars of his inquiries and the results, showing a poor prospect of collection, and stating that he could discover nothing out of which to make it without "taking in" another party, who would not give the information unless they were allowed forty per cent of the claim. This letter was given to Schultheis about April 1st, to be sent to the company, and was so sent and returned in a letter of the president, of April 3d, of which the abstract shows only the following: "From the way Porter writes we judge Sloop a rascal. We will leave matters with you to do your best. We fear Sloop will not send us collaterals. We think we will wait and see if Sloop sends note before taking steps to force collection. We return the Porter letter."

Schultheis testified that when this letter was shown to him he said to appellant, "the house will not stand such charges; wire your man at once," and that appellant replied, "he will not change my terms, they are pinned to every claim sent out; they are ten per cent." And further, that when he returned the letter he told appellant that they left the matter to him (Schultheis). From the dates given, the lack of needed information and the president's letter, it was evident that all this occurred a week or longer before the attachment suit was brought, or it was known that any suit would be brought.

The " party " referred to by Porter was Barney Dysert, cashier of the Hayes Banking Co., who testified that Porter proposed, for the information sought, to " divide fees " with him, but he asked twelve and a half per cent of the amount collected, which Porter paid.   He said nothing about forty.

It is not claimed that the company or Schultheis expressly authorized any such payment.   Appellant says he gave no instructions to Porter in answer to his letter, because he had himself received none from appellee or Schultheis.   According to the latter's statement, he told appellant, when he returned the Porter letter, that " the company left the matter of the collection in his (Schultheis') hands," and he had already instructed him most emphatically on that point.   Appellant denied this.   But however that may be, we think the weight of the evidence shows that he understood the conduct of Porter, in regard to the residue not remitted, as wholly unauthorized and wrongful.   The propriety of the verdict can not be doubted if appellant undertook the collection for ten per cent of the amount collected.   For in that case, the reputation of Porter and the reasonable value of the services rendered in the course of collection would be wholly immaterial.   It was for the jury to determine that question upon the conflicting testimony of Schultheis and the appellant.   They appear to have believed Schultheis; and perceiving no material error on the part of the court, the judgment will be affirmed.